**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **PEGGY MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-0417-CVE-JFJ** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: defendant's motion for partial summary judgment (Dkt. # 55); defendant's motion to exclude all evidence and witnesses not timely disclosed (Dkt. # 68); defendant's motion to exclude or limit the testimony of Casey McGuire and WW Roofing (Dkt. # 70); defendant's motion to exclude or limit the testimony of Stephanie Lee (Dkt. # 71); plaintiff's motion to conduct additional discovery under Fed. R. Civ. P. 56(d) (Dkt. # 80); and State Farm's motion to strike plaintiff's response to objections to plaintiff's pretrial disclosures (Dkt. # 117). Defendant State Farm Fire and Casualty Company (State Farm) seeks summary judgment on plaintiff Peggy Moore's claim for breach of the covenant of good faith and fair dealing (bad faith). Dkt. # 55. State Farm also asks the Court to exclude all of plaintiff's evidence and witnesses, because plaintiff failed to file timely pretrial disclosures pursuant to the Court's scheduling order. Dkt. # 68. State Farm also asks the Court to exclude the testimony of two of plaintiff's expert witnesses. Dkt. ## 70. 71.

## I.

State Farm issued a homeowner's insurance policy to Moore for her home located in Claremore, Oklahoma, and the policy was in effect from January 17, 2024 to January 17, 2025. Dkt.

# 55-1, at 1. The policy covers "accidental physical loss to the property . . ., unless the loss is excluded or limited" by another provision of the policy, but the loss does not include any diminution in value of the insured property. Dkt. # 55-2, at 16. On May 31, 2024, plaintiff submitted a claim for property damage suffered during a storm that occurred on May 25, 2024. Dkt. # 55-3. State Farm assigned an external claim resource, George Harris, to conduct an inspection of plaintiff's home, and Harris scheduled an inspection for June 11, 2024. Dkt. # 55-4, at 4. Harris determined that wind and fallen trees displaced some roof shingles on the rear slope of the roof, and the storm had also damaged wood fencing. Id. at 3. Based on Harris' inspection, State Farm offered to pay to replace 20 shingles and for damage to gutters and fencing, and State Farm issued a total payment of $3,185.21 to Moore. Dkt. # 55-6.

Moore contacted State Farm after being advised by a roofing company that the shingles had been discontinued by the manufacturer and could not be replaced, and State Farm told Moore where she could obtain replacement shingles. Dkt. # 55-4, at 1. Moore had her property inspected by a contractor, Amanda Medlin, who advised Moore that she had found extensive damage to the roof of Moore's home. Medlin noted damage to roof shingles on the north and south slopes of the roof that State Farm did not include in its damage estimate, and Medlin photographed the additional damage. Dkt. # 55-7; Dkt. # 79-35. Medlin sent an e-mail to State Farm noting the additional damage, and Medlin recommended that a total roof replacement was warranted due to the scope of the damage. Dkt. # 55-7. The email included a link to Medlin's photographs of the roof. Id. State Farm received the email and reviewed Medlin's photographs on September 18, 2024, but State Farm did not immediately take any action in response to the email. The claims file shows that a State Farm employee, Kyle Lynn, reviewed Medlin's photographs on November 1, 2024, but Lynn found

"no update needed at this time" and took no action on plaintiff's claim. Dkt. # 55-9, at 2. It appears that State Farm did not notify Moore that it had reviewed the new evidence and, by November 21, 2024, Moore had not heard from State Farm about the information provided in support of her insurance claim by Medlin. Id. She called State Farm to inquire about the status of her claim, and Medlin re-sent to State Farm the prior email with minor alterations on November 21, 2024. Dkt. # 55-9, at 2; Dkt. # 55-10. On December 13, 2024, State Farm noted in Moore's claim file that it had reviewed the additional information and did not find any additional or uncompensated damage from its original assessment, and State Farm sent an email to Moore notifying her of its decision. Dkt. # 55-8; Dkt. # 55-11.

In February 2025, a public insurance adjustor, Casey McGuire, inspected Moore's property and determined that plaintiff's home needed a total roof replacement. Dkt. # 55-12. McGuire sent an email to State Farm on behalf of Moore notifying State Farm that he would be representing Moore with the resolution of her insurance claim, and McGuire requested that all future communications be directed to him. Dkt. # 55-13. McGuire demanded that State Farm produce various documents, including the underwriting file and all notes related to the handling of Moore's claim. Id. at 4. McGuire's email included a sworn statement of loss signed by Moore in which she stated that the actual cash value of her wind and hail damage claims was $21,507.24. Id. at 6. McGuire provided numerous photographs of the house and the roof. Dkt. # 55-14. On April 3, 2025, State Farm sent an email to McGuire explaining that the photographs provided by McGuire did not disclose uncompenstated wind and hail damage. Dkt. # 55-15. State Farm claimed that the "photos you have submitted show delamination and a zippering effect, which is consistent with wear, tear, and

deterioration which is not covered under the policy." Id. State Farm declined to provide any additional compensation or conduct a second inspection. Id.

On May 23, 2025, Moore filed this case in Tulsa County District Court, alleging claims of breach of insurance contract and breach of the covenant of good faith and fair dealing (bad faith) against State Farm. State Farm removed the case to federal court. The Court entered a scheduling order (Dkt. # 15), but the parties jointly requested an extension of all deadlines in the scheduling order (Dkt. # 19). The Court reset the discovery cutoff for May 29, 2026, and this deadline was later extended to August 7, 2026. As the case progressed, plaintiff missed deadlines to exchange her preliminary witness lists and provide expert disclosures, and State Farm sought to exclude witnesses and evidence due to plaintiff's repeated failure to comply with scheduling order deadlines. Dkt. # 43. Plaintiff offered no meaningful excuse in response to State Farm's motion, but she argued that any extension of the scheduling order would cure any prejudice allegedly suffered by State Farm. Dkt. # 51. Plaintiff filed a motion to extend all remaining deadlines in the scheduling order, including the discovery cutoff, to allow plaintiff to conduct additional discovery concerning State Farm's alleged pattern or practice of underpaying or denying valid wind and hail damage claims. Dkt. # 50. On August 18, 2026, the Court denied plaintiff's motion to extend deadlines due to plaintiff's lack of diligence in preparing for trial. Dkt. # 63. Plaintiff filed a motion (Dkt. # 74) to compel discovery concerning State Farm's alleged scheme and another motion for extension of scheduling order deadlines, and both of those motions have been denied. State Farm has filed a motion for summary judgment as to plaintiff's bad faith claim, as well as various motions to exclude

evidence.[1] Plaintiff has filed a response to the motion for summary judgment, which includes a request to conduct additional discovery under Fed. R. Civ. P. 56(d).

**II**

State Farm seeks summary judgment on plaintiff's bad faith claim, because there is a legitimate dispute regarding coverage or the value of the claim under the insurance policy and there is no other evidence suggesting that State Farm acted in bad faith when it reached a decision on plaintiff's insurance claim. Dkt. # 55. Plaintiff responds that the underpayment of her claim was part of a larger plan or scheme to systematically deny or underpay valid wind and hail damage claims and, specifically as to plaintiff's claim, State Farm conducted a "woefully inadequate investigation" and ignored evidence in the record showing that the only viable repair was total roof replacement. Dkt. # 7

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored

---

[1] Both parties have filed motions in limine (Dkt. ## 69, 72) to exclude numerous categories of evidence, but those motions will not be considered in this Opinion and Order.

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

The Oklahoma Supreme Court has held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." Christian v. Am. Home. Assurance Co., 577 P.2d 899, 904 (Okla. 1977). "The core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'" Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1255 (10th Cir. 2010) (quoting McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981)). To succeed on a bad faith claim, a plaintiff "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of [plaintiff's] claim." Oulds v.

Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993); accord Shotts v. GEICO Gen. Ins. Co., 943 F.3d 1304, 1314 (10th Cir. 2019). According to the Tenth Circuit, courts generally use a two-step analysis to determine whether a plaintiff has made a sufficient showing of bad faith. Shotts, 943 F.3d at 1314-15. The Court considers "whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim" and, "if the court determines there is a legitimate dispute between the parties, . . . whether the plaintiff offered specific additional evidence to demonstrate bad faith." Id. at 1315. "The additional evidence required for this showing" may include evidence that 1) "the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage"; 2) the insurer "denied the claim for an illegitimate reason"; 3) the insurer "otherwise failed to treat the insured fairly"; and 4) "the insured performed an inadequate investigation of the claim." Id. (internal quotations and citations omitted) (emphasis and alterations in Shotts, 943 F.3d at 1315).

Before reaching the merits of plaintiff's bad faith claim, the Court will consider plaintiff's request to conduct additional discovery under Rule 56(d), which provides: which provides:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "The general principle of Rule [56(d)] is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discovery information that is essential to his opposition.'" Price ex rel. Price v. Western Resources, Inc., 232 F.3d 779, 783 (10th

Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). To obtain relief under Rule 56(d), the party seeking relief must show "(1) that necessary and probable facts are not available, (2) why those facts cannot be presented currently, (3) 'what steps have been taken to obtain these facts,' and (4) 'how additional time will enable [plaintiffs] to' obtain those facts and rebut the motion for summary judgment." Blixseth v. Credit Suisse AG, 129 F. Supp. 3d 1190, 1210-11 (D. Colo. 2015). The party seeking additional time to conduct discovery must submit an affidavit or declaration that "explain[s] why facts precluding summary judgment cannot be presented." Committee for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992). Rule 56(d) is not a "license for a fishing expedition" and the party seeking to a defer a ruling on a motion for summary judgment must identify specific discovery that is necessary in order to fully respond to the motion. Lewis v. City of Fort Collins, 903 F.2d 752, 759 (10th Cir. 1990). Relief should not be granted under Rule 56(d) when the "desired discovery would not meet the issue on which the moving party contends there is no genuine factual issue." Jones v. City and County of Denver, Colorado, 854 F.2d 1206, 1211 (10th Cir. 1988).

Plaintiff seeks to conduct additional discovery on State Farm's alleged pattern or practice of underpaying or denying valid wind and hail damage claims, and plaintiff states she filed a motion (Dkt. # 74) to compel additional discovery on these matters from State Farm. Dkt. # 79-1. Plaintiff claims that she cannot fully respond to the motion for summary judgment until she receives State Farm's discovery responses on these matters. State Farm responds that plaintiff failed to timely conduct discovery concerning the existence of an alleged scheme, and the discovery sought by plaintiff would have no tendency to rebut the arguments made in State Farm's motion for summary judgment. Dkt. # 90. The Court finds no basis to permit plaintiff conduct discovery on State Farm's

alleged scheme, as plaintiff was on notice when responding to the motion for summary judgment that such discovery would not be permitted in this case and the magistrate judge has denied plaintiff's motion to compel. Plaintiff previously filed a motion to extend scheduling order deadlines, including the discovery cutoff, and the Court specifically rejected plaintiff's request to reopen discovery due to plaintiff's failure to diligently conduct discovery. Dkt. # 63, at 3. Plaintiff failed to timely disclose that she was even seeking to prove her bad faith claim based on an alleged scheme on the part of State Farm, and granting plaintiff's request for discovery under Rule 56(d) would essentially excuse her failure to comply with the Court's scheduling order. Plaintiff can adequately respond to State Farm's motion for summary judgment without additional discovery concerning an alleged scheme, as the bad faith claim as actually pled by plaintiff had nothing to with such a scheme, and plaintiff's motion to conduct additional discovery under Rule 56(d) (Dkt. # 80) is denied.

Even though plaintiff's request for additional discovery has been denied, she has attached numerous exhibits to her response in an attempt to prove the existence of scheme to underpay or deny wind and hail damage claims. The Court will initially consider whether plaintiff's allegations of a scheme to underpay or deny claims can be used to show that State Farm acted in bad faith in this case. Plaintiff's petition (Dkt. # 2-2) does not include any allegations concerning a scheme or plan to underpay wind and hail damage claims, and plaintiff's bad faith claim as pled in her petition is focused solely on State Farm's handling of her insurance claim. The parties joint status report (Dkt. # 14) contains no allegations suggesting that plaintiff's claim was denied or underpaid as a part of a broader scheme on the part of State Farm. State Farm points out that the documents attached to plaintiff's response concerning the existence of an alleged scheme all come from other litigation

involving State Farm, and plaintiff failed to produce those documents during discovery in this case. Dkt. # 89, at 5. The discovery cutoff in this case expired on August 3, 2026, and none of the documents plaintiff is now relying on to prove the existence of the alleged scheme were produced by plaintiff during pretrial discovery. Plaintiff seems to be taking the position that these documents were "publicly available" and disclosed to State Farm in another case and, therefore, plaintiff should be permitted to use the documents to prove the existence of a scheme in this case. Dkt. # 79, at 10 n.1. The Court has previously rejected plaintiff's request to extend the discovery cutoff, and the parties have been advised that evidence relating to an alleged scheme on the part of State Farm is outside the scope of plaintiff's claims. For the purpose of ruling on State Farm's motion for summary judgment, plaintiff's exhibits two through 30 were not produced in pretrial discovery and are irrelevant in this case, and these exhibits will not be considered when ruling on State Farm's motion for summary judgment.

State Farm argues that it had legitimate basis to dispute coverage and it reasonably determined that plaintiff's roof did not require total replacement under her insurance policy. The primary issues disputed by the parties are whether State Farm had a good faith basis to reject plaintiff's request for total roof replacement and plaintiff's dispute that repair of the roof was not a viable option. The Court will initially consider whether there was a legitimate dispute concerning the need for total roof replacement. There is no dispute that State Farm conducted a timely investigation, as it dispatched Harris to investigate plaintiff's property eight days after receiving plaintiff's insurance claim. Dkt. # 55-4, at 3. Harris determined that approximately 20 roof shingles needed to be replaced, but plaintiff received opinions from a roofing company and a licensed public adjustor that her roof was substantially damaged and needed a full replacement. Dkt. # 55-7; Dkt.

# 55-12. State Farm examined the evidence submitted by plaintiff and found no additional wind and hail damage, but State Farm also noted that there was evidence of improper installation of shingles, which would not be a covered loss. Dkt. # 55-9, at 2. The licensed public adjustor, McGuire, noticed the same improper installation problems and stated that the method of installation did not comply with industry standards. Dkt. # 55-12, at 2. The evidence submitted by plaintiff does not clearly show that State Farm's resolution of her insurance claim was made in bad faith merely based on State Farm's decision not to pay for a total roof replacement.

The parties also dispute whether State Farm correctly determined that the damaged roof shingles could be repaired. After receiving notice of State Farm's decision, plaintiff contacted a roofing company and learned that the specific shingle used on her roof was no longer available for purchase. Dkt. # 55-4, at 1. Plaintiff advised State Farm that she could not obtain replacement shingles, and State Farm left a message for plaintiff describing where she could find the shingles. Id. Plaintiff disputes the replacement shingles recommended by State Farm would actually work and she claims that her expert determined that repairing the shingles is not a viable option. Dkt. # 55-7, at 1. Plaintiff may ultimately be correct that a repair of her roof is not a viable option but, even assuming this to be true, this does not tend to show that State Farm lacked a good faith basis to deny her demand for a total roof replacement. Plaintiff's expert did test whether one particular method of repair would be available, but this merely shows that there is a dispute between the parties as to whether a more limited repair of plaintiff's roof would be successful. Plaintiff's evidence falls far short of showing that repair was wholly infeasible, and the Court finds that the repairability of plaintiff's roof is also a legitimate dispute concerning the existence of insurance coverage.

State Farm has shown that there was a legitimate coverage dispute, but plaintiff contends that she can still establish that State Farm acted in bad faith by partially denying her claim. She claims that she has presented evidence showing a genuine dispute as to "(1) the legitimacy of [State Farm's] Claim assessment, (2) the legitimacy of the purpose of Defendant's Claim decision, (3) the fairness of [State Farm's] decision, and (4) the adequacy of [State Farm's] Claim investigation." Dkt. # 79, at 26. Plaintiff's arguments are primarily based on the existence of an overarching scheme to deny claims for total roof replacement, but the Court has already determined that this issue is outside of the scope of the bad faith claim actually alleged by plaintiff.[2] Plaintiff argues that State Farm knowingly relied on a deficient investigation to support its partial denial of plaintiff's wind and hail damage claim, and plaintiff provided evidence to State Farm showing that the damage exceeded the small number of damaged shingles identified by State Farm's inspector. Dkt. # 79, at 24. Plaintiff claims that State Farm later relied on the excuse of improper installation to explain the additional damage found by Medlin and McGuire, and this shows that State Farm acted in bad faith by blindly accepting its inspector's report without sufficient inquiry into the adequacy of the inspector's investigation. Id. at 24-25. Plaintiff's arguments concerning the adequacy of State Farm's investigation are more appropriately classified as complaints about State Farm's findings, rather than than the methodology of the investigation, and this argument does not tend to show that State Farm acted in bad faith by relying on the initial inspection conducted by a third-party inspector. Plaintiff's own public adjustor, McGuire, noted improper installation as part of the reason for the need to replace plaintiff's roof, and State Farm's reliance on improper installation as a basis to support its

[2] In particular, plaintiff's arguments based on the "legitimacy" and "fairness" of State Farm's claims handling are based on the alleged scheme, and these arguments will not be considered based on the Court's prior rulings.

decision does not appear to be unreasonable. Dkt. # 55-12, at 2. Plaintiff's generalized complaints about the sufficiency of State Farm's investigation do not tend to show that State Farm acted in bad faith by conducting an unreasonable investigation.

Plaintiff seems to be making an argument that the evidence in favor of total roof replacement was so overwhelming that no reasonable insurer could have denied her claim. Dkt. # 79, at 26. The Court has already determined that State Farm relied on a legitimate coverage dispute as a basis to partially deny plaintiff's claims for wind and hail damage, and this necessarily implies that the evidence was not so one sided that State Farm was required to pay for a total roof replacement. Plaintiff's arguments in an attempt to show that State Farm acted in bad faith merely highlight the disputed nature of plaintiff's insurance claim, and plaintiff has not identified any additional evidence outside of the legitimate coverage dispute tending to show that State Farm acted in bad faith. The Court finds that State Farm's motion (Dkt. # 55) seeking summary judgment on plaintiff's bad faith claim should be granted.

**III.**

State Farm has filed motions to exclude plaintiff's expert witnesses based on procedural deficiencies with plaintiff's expert disclosures and the substantive reliability of the experts' opinions. Dkt. ## 70, 71. State Farm also argues that plaintiff failed to file timely pretrial disclosures, and State Farm asks the Court to exclude all evidence and witnesses that should have identified in plaintiff's pretrial disclosures. Dkt. # 68. Plaintiff responds that Stephanie Lee, one of her roofing experts, applied a reliable methodology to reach her opinions that full roof replacement was warranted and that a method of repair would not work, and State Farm's challenges to her expert testimony go to the weight rather than the admissibility of her testimony. Dkt. # 82. Plaintiff

contends that her licensed public adjustor, McGuire, can offer lay witness opinion testimony concerning the condition of the roof and insurance coverage, because these opinions are based on his personal knowledge and general experience. Dkt. # 87. As to plaintiff's untimely pretrial disclosures, plaintiff makes no attempt to explain why her pretrial disclosures were filed more than one month after the deadline, but she argues that State Farm was not prejudiced by the untimely disclosure.

**A.**

State Farms asks the Court to exclude all exhibits and witnesses that should have been disclosed in plaintiff's pretrial disclosures, which was due on August 7, 2026 but was not filed until September 13, 2026. Dkt. # 68. State Farm contends that it will be substantially prejudiced due to plaintiff's lack of diligence in comply with scheduling order deadlines, and plaintiff has offered no excuse or justification for her failure to file timely pretrial disclosures. Dkt. # 92. Plaintiff responds that she has produced all discovery requested by State Farm, and the Court should not punish the litigant for any failure by her attorneys to comply with court deadlines.[3] Dkt. # 83.

Federal Rule of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The district court has substantial

[3] State Farm filed an objection (Dkt. # 98) to plaintiff's untimely pretrial disclosures, which is expressly permitted by Fed. R. Civ. P. 26(a)(3)(B). Plaintiff filed a response (Dkt. # 116) to State Farm's objection, and Rule 26 does not permit such a filing. State Farm has filed a motion to strike plaintiff's response, because it is not authorized by Rule 26 and it improperly incorporates plaintiff's prior filings. Dkt. # 117. The Court finds that the motion to strike (Dkt. # 117) should be granted, as plaintiff's response is improper and duplicative of her prior filings.

discretion to determine whether a Rule 26(a) violation is harmless or substantially justified. Neiberger v. Fed Ex Ground Package System, Inc., 566 F.3d 1184, 1191-92 (10th Cir. 2009). The Tenth Circuit has provided four factors to guide district courts in determining whether a discovery violation is harmless or substantially justified:

> (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfullness."

Woodworker's Supply, Inc. v. Principal Mut. Life. Ins. Co., 170 F.3d 985, 933 (10th Cir. 1999); see also HCG Platinum, LLC v. Preferred Product Placement Corporation, 873 F.3d 1191, 1201 (10th Cir. 2017) (explaining that the district court is not required to "mechanically recite the terms 'substantial justification' or 'harmlessness'" but its analysis should "reveal consideration of the *Woodworker's* criteria"). If the court finds that a discovery violation has occurred, the sanction selected must be "just" and "related to the particular 'claim' which was at issue . . . ." Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992).

The Court will initially consider whether plaintiff has failed to disclose evidence or witnesses to trigger the application of Rule 37. Plaintiff claims that she has produced all discovery requested by State Farm and State Farm is in possession of all relevant evidence and information, and plaintiff's counsel's failure to file pretrial disclosures does not justify the imposition of any sanction against plaintiff. Dkt. # 83, at 2. The Court disagrees and finds that a violation of Rule 26(a) has plainly occurred. Pretrial disclosures must be provided to the opposing party to provide notice of what evidence and witnesses will actually be offered at trial, and a party is likely in possession of substantially more information than has been produced in pretrial discovery. Fed. R. Civ. P.

26(a)(3). Pretrial disclosures help parties focus their trial preparations on the evidence and witnesses that will actually be offered at trial, rather than full scope of all potentially available evidence. Plaintiff's failure to provide timely pretrial disclosures clearly violates Rule 26(a), and the Court will consider the Woodworker factors to determine what sanction is appropriate under Rule 37.

State Farm argues that plaintiff's repeated failure to comply with scheduling deadlines effectively denied State Farm notice of the evidence and witnesses that plaintiff intends to use at trial, and the first Woodworker factor (prejudice or surprise) weighs heavily in favor of State Farm. Dkt. # 68, at 2-4. Plaintiff responds that State Farm has suffered no prejudice, because plaintiff has complied with all of State Farm's discovery requests and State Farm was able to file motions in limine without plaintiff's pretrial disclosures. Dkt. # 83, at 3. The Court finds that State Farm has been prejudiced by plaintiff's repeated failure to comply with deadlines to provide notice of the evidence and witnesses she intends to rely on to prove her claims, which includes the untimely exchange of a preliminary witness list, expert disclosures, pre-marked exhibits, and pretrial disclosures. Dkt. # 68, at 4-5. There is no doubt that plaintiff's counsel's lack of diligence has impaired State Farm's ability to prepare a defense to plaintiff's claims. The second factor (ability to cure) weighs in favor of State Farm, as plaintiff's pretrial disclosures (Dkt. # 88) were not filed until September 13, 2026 and included numerous exhibits and witnesses who had not previously been identified as relevant to this case. In fact, much of the new evidence relates to plaintiff's allegations concerning a scheme to underpay or deny wind and hail damage claims, which the Court has already told plaintiff is not admissible in this case due to plaintiff's failure to timely raise the issue. Dkt. # 63 (denying plaintiff's request to extend scheduling deadlines and reopen discovery to allow plaintiff to conduct additional discovery concerning alleged scheme by State Farm); Dkt. # 99 (denying

plaintiff's request to continue trial and allow additional discovery on State Farm's alleged scheme). Continuing deadlines to allow the parties to conduct additional discovery could cure plaintiff's untimely pretrial disclosures, but this would effectively excuse plaintiff's counsel's lack of diligence and punish State Farm by requiring additional untimely discovery. For many of the same reasons, the third factor (disruption of trial) also weighs in favor of excluding much of the untimely disclosed evidence. Finally, the Court does not find that plaintiff's counsel acted in intentional bad faith by filing untimely pretrial disclosures, but plaintiff's counsel's repeated disregard of scheduling order deadlines can reasonably be construed as willfulness. Plaintiff's response (Dkt. # 83) entirely ignores her own attorney's failure to comply with deadlines set by this Court, and she makes no attempt to provide an explanation that would justify her attorneys' conduct.

The Court finds that plaintiff's repeated failures to comply with scheduling order deadlines, of which the most serious violation is the filing of plaintiff's pretrial disclosures more than a month late, warrants a significant sanction to ensure that State Farm receives a fair trial. However, State Farm is in possession of a substantial amount of discovery that was timely produced and plaintiff is not wholly unprepared for trial, and the Court finds that the wholesale exclusion of plaintiff's evidence and witnesses constitutes too harsh of a sanction under the circumstances. The Court has already explained that plaintiff will not be permitted to offer evidence concerning State Farm's alleged scheme to deny or underpay wind and hail damage claim, and no additional sanction is necessary to exclude that evidence. No evidence referenced in plaintiff's pretrial disclosures will be admissible unless it was disclosed to State Farm prior to expiration of the discovery agreement, unless State Farm expressly agreed to conduct certain discovery after the discovery cutoff. Finally, to cure any prejudice caused plaintiff's untimely disclosures, State Farm may file a motion identifying any

discovery that State Farm must undertake to cure the prejudice caused by plaintiff's counsel's conduct, and plaintiff must comply with the discovery requests on an expedited basis.

**B.**

State Farm asks the Court to exclude the testimony of Stephanie Lee, an expert retained by plaintiff to offer testimony on the cause of damage to plaintiff's roof, the need for a total roof replacement, and the availability of coverage under the policy. State Farm contends that plaintiff cannot meet her burden to show that Lee applied a reliable methodology to reach her opinions, and Lee's opinions concerning causation of damage to the roof and repairability are mere speculation. Dkt. # 71. Plaintiff responds that State Farm's arguments go to the weight, rather than admissibility of Lee's expert testimony, and State Farm's motions should be denied in its entirety. Dkt. # 82.

Lee is the co-owner of RH Consulting, LLC, which provides expert services and consulting in litigation related to roofing. Dkt. # 71-2, at 7, 12-13. Plaintiff retained Lee to perform a claim and damage assessment of her roof, and Lee inspected the roof on April 6, 2026. Dkt. # 71-1, at 2; Dkt. # 71-2, at 15. Before the inspection, Lee examined weather data and confirmed that an EF-3 tornado produced substantial winds at the home's location on the date of the loss. Dkt. # 71-1, at 3. In addition to an inspection of the roof, Lee brought a roofing contractor to attempt a repair of a small section of the roof to determine if repair was a feasible option. Id. Lee wrote a report providing four opinions in support of plaintiff's claims:

> Opinion #1: A storm that produced an EF-3 tornado and small hail occurred at Ms. Moore's residence on May 25, 2024. This storm caused damage to Ms. Moore's roof, gutters, fence, and greenhouse.
>
> Opinion #2: Ms. Moore's roof cannot be repaired to pre-loss condition through localized repairs suggested by State Farm.

> Opinion #3: State Farm owes for the full replacement of the roof system, along with all other storm damaged items, to properly indemnify Ms. Moore according to the coverages purchased and contained in State Farm's insurance policy.
>
> Opinion #4: The replacement cost of this covered loss is $21,918.06.

Id. at 71-4-5. Lee's opinion as to repair of the roof was based on the roofing contractor's assessment that new shingles could not be installed without damaging adjacent shingles, and the attempted repair resulted in additional damage to the roof. Id. at 5. In addition, the shingle used on plaintiff's roof had been discontinued and full replacement of the roof was the only option to ensure uniformity of the roofing shingles. Id. Lee states that she used a software program call Xactimate to estimate the amount of plaintiff's loss, which is the industry standard used by insurance companies for this task. Id.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of "scientific" expert testimony under Fed. R. Evid. 702. The Supreme Court extended the gatekeeper role of federal district courts to all expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts in considering a Daubert challenge to the admissibility of expert testimony. First, the court should make a preliminary finding that the expert is qualified to testify. Id. at 1232-33. Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his/her conclusion and that the expert's opinion is based on a reliable factual basis. Id. at 1233. The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates

> of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94). The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert. Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir. 2003). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissable. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).

The Court initially notes that strict application of the Daubert factors is not appropriate given the nature of the expert testimony, as Lee's testimony is based more on her background and experience rather than purely scientific analysis. See Kumho Tire Co., 526 U.S. at 150 (courts may apply a subset of Daubert factors or other factors that become relevant under the particular circumstances to determine the admissibility of expert testimony); United States v. Foust, 989 F.3d 842, 846-47 (10th Cir. 2021) (explaining that the Daubert factors are meant to "helpful, not definitive" and the factors do not directly correspond to non-scientific expert testimony). An expert in the relevant field of general contracting and roof repair would not necessarily apply a scientifically testable theory or technique, and the analysis has more to with the experience of the contractor rather than the contractor's ability to apply a scientific methodology that leads to testable results. State Farm

complains that Lee makes "assumptions" about the cause of roof damage and that Lee failed to apply a reliable methodology when overseeing an attempted repair of the roof. Dkt. # 71, at 7-10. The Court does not find that these complaints merit the wholesale exclusion of Lee's testimony, because State Farm has not shown that an expert in the relevant field would apply a more rigorous methodology.

The Court generally agrees with plaintiff that State Farm's challenges to Lee's testimony go to the weight of her testimony, rather than its reliability, but the Court will place certain limitations on the scope of Lee's expert testimony. State Farm contends that Lee lacks a reliable basis to conclude that the May 25, 2024 storm caused all of the observable damage to plaintiff's property, and Lee failed to adequately rule out other causes of damage before reaching this conclusion. Dkt. # 71, at 8. However, Lee confirmed that a severe weather event occurred at plaintiff's location and State Farm's own investigation confirmed that the storm substantially damaged plaintiff's property. The Court also takes into account the nature of the opinion being offered, which is based more on expertise than scientific analysis, and finds that Lee has a reasonable basis to testify that the May 25, 2024 caused sufficient damage to support plaintiff's demand for total roof replacement.[4] Lee may testify about her inspection, her opinions concerning the condition of the roof, the cause of any damage, and the cost of replacing the roof. However, the Court finds that some limitations are appropriate based on Lee's expert report and deposition testimony. Lee may testify that the repair method attempted by the roofing contractor during her inspection was unsuccessful, but she may not

---

[4] Due to the lapse in time between the storm and Lee's inspection, Lee may not conclusively testify that the May 25, 2024 storm was the sole or definitive cause of all damage to plaintiff's roof. See infra at 25-26 (limiting McGuire's causation testimony in a similar manner).

testify that any other type of repair method would also be unsuccessful. There is nothing in her report or deposition testimony suggesting that she considered or attempted any other type of repair, and she may not offer an opinion that all possible repair methods would be unsuccessful. Second, the Court agrees with State Farm that Lee may not offer an opinion that State Farm breached the insurance contract by failing to pay for a new roof for plaintiff's home. This would constitute a finding on the ultimate issue in the case and, although such opinions are not absolutely prohibited, this finding should be reserved for the jury to make on its own.[5] Hubbell v. State Farm Fire & Casualty Co., 2022 WL 3050020, *6 (N.D. Okla. Aug. 2022) (precluding expert testimony on the ultimate issue of insurance coverage when there are no complex issues of insurance coverage and the parties' dispute is primarily factual in nature). Lee may testify that total roof replacement is the only viable option under the circumstances, but she may not suggest that State Farm "owes" plaintiff a new roof or make the legal conclusion that total roof replacement is required under the insurance policy.

C.

State Farms seeks to exclude the expert testimony of Casey McGuire and WW Roofing on numerous grounds, and State Farm also argues that plaintiff should not be permitted to avoid limitations on expert testimony by eliciting lay opinions from these witnesses. Plaintiff responds to some of the arguments made by State Farm, and it is not clear from plaintiff's response (Dkt. # 70) if she even intends to offer McGuire or WW Roofing as expert witnesses.

Plaintiff hired a licensed public adjustor, McGuire, to assist her with the claims submission process after State Farm denied her request for a total roof replacement, meaning that neither

[5] The parties are advised that this ruling applies equally to State Farm's expert witnesses, and State Farm may not elicit expert testimony that plaintiff's insurance claim was not covered under the policy.

McGuire nor his company WW Roofing was retained as an expert witness for the purpose of this litigation. Dkt. # 55-12; Dkt. # 55-13. McGuire inspected plaintiff's property in March 2025 and July 2026, but he prepared an estimate of repair costs prior to his first visit. Dkt. # 70-5, at 27, 60-61. During his first inspection, McGuire took numerous photographs of the damage to plaintiff's property, and he marked wind and hail damage on plaintiff's roof and guttering. Id. at 29-31. McGuire submitted his photographs to State Farm and he asked State Farm to fully replace plaintiff's roof due to the extent of the damage. Dkt. # 55-12. McGuire conducted a second investigation in July 2026, and he took additional photographs of plaintiff's property. Dkt. # 70-5, at 42-43.

State Farm argues that plaintiff failed to make the required expert disclosures for McGuire and WW Roofing, and plaintiff should be prohibited from calling either witness as an expert at trial. Dkt. # 70, at 2-4. Plaintiff has failed to respond to this argument. Under Fed. R. Civ. P. 26(a)(2)(c), non-retained experts who are not required to provide a written report must disclose:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

The 2010 amendments to the Federal Rules of Civil Procedure state that:

> Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specifically retained and may not be as responsive to counsel as those who have.

Fed. R. Civ. P. 26 Advisory Committee Notes (2010 Amendments). These requirements are not intended to be onerous, but they cannot be wholly ignored or dismissed by a party seeking to offer expert testimony. Nosewicz v. Janosko, 2019 WL 4248895, *5 (D. Colo. Aug. 19, 2019). The

disclosure must be sufficient to allow the opposing party to prepare effective cross-examination and potentially to arrange for expert testimony to rebut the opinions of the disclosing party's expert. Fitzgerald by and Through Fitzgerald v. Catholic Health Initiatives Colorado, 2025 WL 861171, *2 (D. Colo. Mar. 19, 2025).

Plaintiff's pretrial expert disclosure of McGuire and WW Roofing, to the extent there was any, merely states that McGuire and WW Roofing will testify about "[p]laintiff's claim, scope and extent of purported damages." Dkt. # 70-1, at 2. This statement is contained in plaintiff's initial disclosure, and State Farm contends that this statement was the sole pretrial disclosure concerning McGuire's and WW Roofing's proposed expert testimony. Plaintiff has made no attempt to show that she made any other pretrial disclosures, and she has not responded to State Farm's argument on this issue. The Court finds that plaintiff has failed to make adequate pretrial disclosure of the opinions of McGuire and WW Roofing, and plaintiff will not be permitted to elicit expert testimony from these witnesses.

Plaintiff argues that McGuire should be allowed to offer lay opinions concerning his personal observations of plaintiff's property, the scope of damage, needed repairs, and the cost of any repairs. Dkt. # 87, at 7-8. Under Rule 701, "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception"; "(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and "(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 702 states that a "witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue"; "(b) the testimony is based on sufficient facts or data"; "(c) the testimony is the product of reliable principles and

methods"; and "(d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; see also Daubert, 509 U.S. at 589-95.

Notably, that a witness has "particularized knowledge" does not automatically place his testimony within the purview of Rule 702. See Fed. R. Evid. 701 Advisory Committee's Note to 2000 Amendments ("For example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. . . . Such opinion testimony is admitted not because of experience, training, or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business"). Rule 702 creates standards that permit experts with no personal knowledge of any relevant facts of a case to form opinions and testify to those opinions at trial.

In prior cases, the Court has determined that a contractor or public adjustor who personally conducted an inspection of a plaintiff's roof may testify as to the condition of the roof and need for replacement. Phillips v. State Farm Fire & Casualty Co., 2023 WL 1466932, *5 (N.D. Okla. Feb. 2, 2023) (allowing licensed public adjustor to offer lay opinion testimony based on her personal observations but prohibiting testimony that damage to the plaintiff's roof was definitively covered under the insurance policy); Wilson v. State Farm Fire & Casualty Co., 2022 WL 1555816, *13-14 (N.D. Okla. 2022) (allowing lay opinion testimony about the extent of damage and repairability but prohibiting lay opinion testimony on the cause of the damage). McGuire is not prohibited from offering opinion testimony that is specifically based on his own observations or perceptions when he inspected plaintiff's property, and this includes opinions formed because of his experience as a contractor. However, he would be crossing the line into expert testimony if he offered opinion

testimony about facts of which he did personally become aware of during his two inspections of plaintiff's property.

The Court finds that there are matters within the scope of McGuire's personal knowledge upon which he may testify as a lay witness, but he would clearly be giving improper expert testimony if he testifies as to all of his opinions. McGuire visited plaintiff's property in March 2025 and July 2026, and he may testify about his observations of the presence of storm damage and the scope of damage to plaintiff's property. This may include his opinions concerning the availability of repair or the need for total replacement of plaintiff's roof, as these matters would be based on his personal knowledge due to his actual observation of the condition of plaintiff's roof. However, McGuire's site inspections occurred nearly two years after the storm giving rise to plaintiff's insurance claim, and he may not testify that the May 25, 2024 storm definitively caused all of the damage to plaintiff's roof. See Dkt. # 70-5, at 31, 48 (McGuire testified in his deposition that his personal observations do not establish the date the damage occurred). McGuire also may not testify to the cost of replacing the roof on plaintiff's home, because the evidence shows that he reached this opinion before he inspected plaintiff's property. McGuire acknowledged that he prepared this estimate before he inspected plaintiff's property, and his estimate was based on satellite photographs and a roof report, rather than his own personal observations. Id. at 60-61 This type of analysis is typically conduct by an expert witness, rather than a lay witness, and McGuire is prohibited from testifying about the cost of replacing plaintiff's roof. Plaintiff is reminded that McGuire's testimony is limited to his capacity as a lay witness, and she may not refer to him as an expert witness during trial.

**IT IS THEREFORE ORDERED** that defendant's motion for partial summary judgment (Dkt. # 55) is **granted** as to plaintiff's bad faith claim. Plaintiff's claim for breach of insurance contract remains pending for trial.

**IT IS FURTHER ORDERED** that defendant's motion to exclude all evidence and witnesses not timely disclosed (Dkt. # 68) is **granted in part** and **denied in part**: State Farm's request to exclude all evidence and witnesses is denied, but plaintiff's ability to offer untimely disclosed evidence and witnesses at trial is limited as outlined in this Opinion and Order.

**IT IS FURTHER ORDERED** that defendant's motion to exclude or limit the testimony of Casey McGuire and WW Roofing (Dkt. # 70) is **granted in part** and **denied in part**: McGuire may not testify as an expert witness but he may offer law witness opinion testimony on the topics identified in this Opinion and Order.

**IT IS FURTHER ORDERED** that defendant's motion to exclude or limit the testimony of Stephanie Lee (Dkt. # 71) is **granted in part** and **denied in part**: State Farm's request to wholly exclude Lee's testimony is denied, but she is prohibited from offering opinions on the ultimate issue of insurance coverage and that there no possible means to repair plaintiff's roof.

**IT IS FURTHER ORDERED** that plaintiff's motion to conduct additional discovery under Fed. R. Civ. P. 56(d) (Dkt. # 80) is **denied**.

**IT IS FURTHER ORDERED** that State Farm's motion to strike plaintiff's response to objections to plaintiff's pretrial disclosures (Dkt. # 117) is **granted**, and plaintiff's response (Dkt. # 116) is **stricken**.

**IT IS FURTHER ORDERED** that the parties shall submit a revised pretrial order no later than **November 10, 2026**.

**DATED** this 22nd day of October, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE